Thomas N. Ciantra
Cohen, Weiss and Simon LLP
330 West 42nd Street, 25th Floor
New York, New York 10036
Telephone: (212) 563-4100
Facsimile: (212) 695-5436

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| LORI DRISCOLL, | |
| Plaintiff, | Case No. 5:16-CV-0059 (DNH/ATB) |
| - against - | COMPLAINT |
| LORETTA E. LYNCH, Attorney General of the United States, and INTER-CON SECURITY SYSTEMS, INC., | JURY DEMAND |
| Defendants. | |

Plaintiff Lori Driscoll by her counsel, Cohen Weiss and Simon LLP, for her complaint alleges as follows:

## INTRODUCTION

1. This is an action against the United States Marshals Service (through United States Attorney General Loretta E. Lynch) and Inter-Con Security Systems, Inc. to redress their unlawful discharge of Lori Driscoll, in violation of the Rehabilitation Act of 1973, as amended, ("Rehabilitation Act"), 29 U.S.C. §791 *et seq.*, the Americans With Disabilities Act, as amended, ("ADA"), 42 U.S.C. §12101 *et seq.* and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§290-30.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343 and 28 U.S.C. §1367.

3. Venue in this Court is proper under 28 U.S.C. §1391 because the events giving rise to the claim occurred in this judicial district.

## THE PARTIES

4. Plaintiff Lori Driscoll ("Driscoll" or "Plaintiff") was employed as a Court Security Officer ("CSO") for thirteen years in the United States Marshals Service's Court Security Program. As a CSO, Driscoll provided security to the federal court system and its judicial officers. From 2001 until September 2014, Driscoll was employed at the U.S. District Court for the Northern District of New York in Syracuse, New York. At all relevant times, she was employed under a contract between the United States Marshals Service and a federal contractor and a collective bargaining agreement between a union and the contractor.

5. Defendant Loretta E. Lynch is Attorney General of the United States and is the proper defendant in the First Cause of Action, Driscoll's Rehabilitation Act claim. The First Cause of Action challenges Driscoll's removal from the Court Security Program and discharge by the Marshals Service ("Marshals Service" or "USMS"), a federal law enforcement agency within the United States Department of Justice responsible for providing for the security of the federal judiciary within the United States District Courts, United States Courts of Appeals and other federal offices and buildings associated with the judiciary. USMS administers the Court Security Program, through which it deputizes CSOs (including Driscoll) so that they function as law enforcement officers with powers of arrest while on duty. USMS contracts with private sector companies, including Inter-Con, which provide security services that are within USMS' responsibility. The Marshals Service jointly employed, with Inter-Con, Driscoll at relevant times including at the time of her discharge.

6. Defendant Inter-Con Security Systems, Inc. ("Inter-Con") is a California corporation with principal offices in Pasadena, California. Inter-Con contracts with the Marshals Service to provide court security services that are within the Marshals Service's responsibility. Since November 1, 2013, Inter-Con has jointly employed, with the Marshals Service, the CSOs working in the Second Judicial Circuit. Inter-Con jointly employed, with the Marshals Service, Driscoll at relevant times including at the time of her discharge.

## FACTS

Driscoll's Hearing Disability

7. Since childhood, Driscoll has had unilateral hearing loss in her right ear as a result of having contracted mumps when she was young. As a result, she cannot hear certain audio frequencies with her right ear. Driscoll's hearing in her left ear has no such loss.

8. From 1980 until March 2001, Driscoll worked as a police officer for the Syracuse Police Department. Driscoll's hearing disability never affected her ability to perform the duties of police officer. She retired from the Syracuse Police Department in 2001.

9. In 2001, Driscoll applied to the Court Security Program. In her application, Driscoll informed the Marshals Service of her hearing disability. The Marshals Service also required Driscoll to submit to a physical examination as part of the application process. That examination included a hearing test which disclosed the hearing loss in Driscoll's right ear. The Marshals Service nonetheless accepted Driscoll into the Court Security Program in 2001. After the Marshals Service accepted Driscoll, it required her to have a physical examination annually. Each of those physical examinations included a hearing test and each of those tests revealed the hearing loss in Driscoll's right ear. The results of each of those examinations and hearing tests were submitted to the Marshals Service.

10. Since 2001, when she became a CSO, Driscoll's hearing has remained stable.

11. In the summer of 2011, following her annual physical, the Marshals Service required Driscoll to purchase and wear a hearing aid for her right ear while on the job.

12. In July 2011, Driscoll purchased a hearing aid and thereafter wore it on the job.

13. Upon information and belief, Inter-Con's site supervisors, as well as U.S. Marshals present at the courthouse where Driscoll worked, saw Driscoll's hearing aid and surmised from it that she had a hearing disability.

14. Driscoll's hearing disability or perceived disability has never affected her ability to safely and efficiently carry out the essential requirements of the CSO position. Specifically, Driscoll can adequately comprehend speech during face-to-face conversations; comprehend speech during telephone conversations; comprehend speech during radio transmissions; comprehend speech when she cannot see another CSO; hear sounds that require investigation and determine the source and location of sounds.

Driscoll's Joint Employment Relationship With Inter-Con and USMS

15. At all relevant times, Driscoll was represented by a labor union, United States Court Security Officers ("USCSO").

16. At the time of Driscoll's discharge, USCSO and Inter-Con were parties to a collective bargaining agreement (the "CBA") governing the terms and conditions of employment for CSOs employed by Inter-Con at the United States District Court for the Northern District of New York, as well as other locations in the Second Judicial Circuit.

17. Article 14.1 of the CBA provides in part that employees may be disciplined or discharged for just cause. The CBA also provides a grievance and arbitration process by which the parties may resolve contractual disputes, including the discharge of a CSO.

18. However, the discharge of a CSO resulting from the Marshals Service's removal of the individual from the Court Security Program is not subject to the contractual grievance process.

19. This is because the Marshals Service exercises exclusive control and discretion over which individuals will be permitted to work in its Court Security Program. Under the terms of its contract with Inter-Con (and otherwise), USMS retains the sole discretion to approve an individual to work in its Court Security Program. USMS has promulgated medical standards for the CSO position, and requires all applicants to the program to submit to a physical examination, the results of which are reviewed by the Marshals Service before a decision is made to accept a candidate into the Court Security Program. CSOs are required to have annual physical examinations, the results of which are reviewed by the Marshals Service. The Marshals Service retains discretion to determine whether a CSO has failed to meet USMS' medical standards, and if so, to remove the CSO from the program.

20. USMS has also promulgated a code of CSO performance standards. Those standards are included in USMS' contract with Inter-Con. Driscoll (and all other candidates for a position in the Court Security Program) are required to acknowledge that their employment in the program is subject to and governed by the USMS' performance standards. In addition, USMS employees comprised part of the panel that interviewed Driscoll and USMS conducted a background check of Driscoll before it accepted her into the Court Security Program.

5

21. USMS co-determined Driscoll's tasks and responsibilities at work. The Marshals Service dictated to Inter-Con the security posts and staffing required in the federal courthouse where Driscoll worked. USMS directed Driscoll's actions in the course of her daily duties; provided Driscoll with the law enforcement equipment that she carried while on duty as a CSO; and periodically tested Driscoll's ability to perform the functions of a CSO.

22. USMS retains sole discretion under its contract with Inter-Con to remove a CSO's authorization to work under the court security contract and in the Court Security Program. Once a CSO's authority to work in the Court Security Program has been revoked by USMS for medical reasons or otherwise, that individual may no longer work as a CSO.

23. By virtue of the foregoing, USMS exercises effective control over Inter-Con's decisions as to whom it may hire as a CSO, and whether to remove a CSO once hired and at work. This is because USMS may refuse to approve any individual hired by Inter-Con and may, as here, determine to remove an individual from the Court Security Program. Once a CSO's authority to work in the Court Security Program has been revoked by USMS for medical reasons or otherwise, the contractor discharges that CSO.

<u>The Marshals Service's Hearing Requirements</u>

24. At all relevant times, USMS and Inter-Con were parties to a contract for the Second Judicial Circuit.

25. USMS, in Section C.9.5.2 of the contract, requires that: "The applicant or incumbent CSO shall be able to hear well enough to safely and efficiently carry out the essential requirements of the CSO position. This includes the ability to adequately comprehend speech during face-to-face conversations; comprehend speech during telephone conversations; comprehend speech during radio transmissions; comprehend speech when the individual cannot

see another CSO; hear sounds that require investigation; and determine the source and location of sounds." The contract details specific hearing testing standards and procedures that purport to assess an individual's ability to meet these requirements.

The Marshals Service and Inter-Con Unlawfully Discharge Driscoll

26. On February 18, 2014, Driscoll completed audiological testing as part of her annual physical.

27. According to a Medical Review Form from the Marshals Service's Judicial Security Division dated April 16, 2014, a physician in Federal Occupational Health ("FOH"), which contracts with the Marshals Service to review CSO annual physicals, reviewed Driscoll's test results and determined that Driscoll should be required to submit to additional testing based on "[n]ew reporting requirements" applicable to CSOs who use a hearing aid or aids and which the Marshals Service adopted after Driscoll's February 18, 2014 test.

28. On September 2, 2014, Driscoll completed the additional testing. Pursuant to the new requirements, Driscoll was required to plug her left ear with a foam earplug and then cover her left ear with a sound attenuating earmuff while her aided right ear was assessed. The Marshals Service had not required this procedure before.

29. According to a Medical Review Form from the Marshals Service's Judicial Security Division dated September 24, 2014, an FOH physician reviewed the results of the additional testing and concluded that Driscoll did not meet the hearing requirements for the job of CSO. Specifically, the physician concluded that Driscoll's "speech reception threshold" and "speech recognition in quiet" results for her right ear did not meet the required level, and that her "impairment ... poses an elevated safety risk to [her]self, [her] colleagues, and the public."

30. The Marshals Service then revoked Driscoll's authority to work in its Court Security Program.

31. The Marshals Service revoked Driscoll's authority to work in its Court Security Program despite the fact that it knew that Driscoll's hearing condition had never affected her ability to safely and efficiently perform the responsibilities of CSO, which she did for thirteen years.

32. The Marshals Service revoked Driscoll's authority to work in its Court Security Program despite the fact that Driscoll did not and was not required to perform the job of CSO with her left ear plugged and covered.

33. The Marshals Service revoked Driscoll's authority to work in its Court Security Program because of her hearing disability or because it regarded her as having a hearing disability.

34. On September 29, 2014, Inter-Con site supervisor Ted Gloo notified Driscoll that she had been medically disqualified because she did not meet the hearing requirements for the job of CSO. Gloo then handed Driscoll a copy of the September 24 Medical Review Form and informed her that her employment with Inter-Con was terminated.

35. Inter-Con discharged Driscoll despite the fact that it knew that Driscoll's hearing disability had never affected her ability to safely and efficiently perform the responsibilities of CSO, which she did for thirteen years.

36. Inter-Con discharged Driscoll despite the fact that Driscoll did not and was not required to perform the job of CSO with her left ear plugged and covered.

37. Inter-Con discharged Driscoll because of her hearing disability or because it regarded her as having a hearing disability.

8

Driscoll Exhausts Her Administrative Remedies

38. Driscoll timely filed a charge against with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the New York State Division of Human Rights, challenging her discharge by Inter-Con. By letter dated October 22, 2015 the EEOC informed Driscoll that she had a right to bring suit within ninety (90) days of the receipt of that letter. This complaint was timely filed within that 90-day period.

39. Driscoll also timely filed, on November 14, 2014, a formal complaint with Marshals Service's Equal Employment Opportunity Office challenging her removal from contract by the Marshals Service. On May 20, 2015, Driscoll requested a hearing before an EEOC administrative law judge on her complaint against the Marshals Service. On January 13, 2016, more than a year after she had filed the formal complaint, Driscoll withdrew her request for a hearing and requested a final agency decision. On January 14, 2016, the EEOC administrative law judge acknowledged withdrawal of the hearing request and directed the Marshals Service's Equal Employment Opportunity Office to issue a final agency decision.

## FIRST CAUSE OF ACTION AGAINST USMS - DISABILITY DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT

40. Driscoll repeats and realleges the allegations set forth in paragraphs 1 through 39 as if stated herein.

41. In discharging Driscoll, who was fully qualified to carry out the duties of CSO, because she is disabled or because it regards her as disabled, the Marshals Service violated the Rehabilitation Act. 29 U.S.C. §791 and §794(a).

## SECOND CAUSE OF ACTION AGAINST INTER-CON - DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

42. Driscoll repeats and realleges the allegations set forth in paragraphs 1 through 41 as if stated herein.

43. In discharging Driscoll, who was fully qualified to carry out the duties of CSO, because she is disabled or because it regards her as disabled, Inter-Con violated the ADA. 42 U.S.C. §12112(b)(2).

## THIRD CAUSE OF ACTION AGAINST INTER-CON - DISABILITY DISCRIMINATION IN VIOLATION OF THE NYSHRL

44. Driscoll repeats and realleges the allegations set forth in paragraphs 1 through 43 as if stated herein.

45. In discharging Driscoll, who was fully qualified to carry out the duties of CSO, because she is disabled or because it regards her as disabled, Inter-Con violated the NYSHRL. N.Y. Exec. Law §296(1)(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment and order:

1. declaring that the Marshals Service violated the Rehabilitation Act;

2. declaring that Inter-Con violated the ADA and the NYSHRL;

3. granting Driscoll equitable relief, including reinstatement and back pay;

4. awarding Driscoll punitive damages, in an amount that a jury may award Driscoll as a result of Inter-Con's intentional discrimination;

5. awarding Driscoll compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and such other non-pecuniary damages

that she suffered, all in an amount that a jury may award Driscoll as a result of USMS and Inter-Con's intentional discrimination;

      6.      granting Driscoll her attorneys' fees and costs in bringing this action; and

      7.      granting Driscoll such other and further relief as this Court deems to be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial before a jury on all issues triable to a jury.

Dated: January 15, 2016
      New York, New York

Respectfully submitted,

*/s/ Thomas N. Ciantra*

Thomas N. Ciantra
COHEN, WEISS and SIMON LLP
330 West 42nd Street
New York, New York 10036
(212) 563-4100
(212) 695-5436

Attorneys for Plaintiff